MICHAEL R. SEW HOY (Cal. Bar No. 243391)
Email: SewhoyM@sec.gov
ROBERTO A. TERCERO (Cal. Bar No. 143760)
Email: TerceroR@sec.gov
MANUEL VAZQUEZ (Cal. Bar No. 295576)
Email: VazquezM@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Katharine E. Zoladz, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> PATRICK JEVON JOHNSON, CHARLES EVERETT (aka CHARLY EVERETT), FRANK EKEJIJA, AND NVC FUND, LLC. <br><br> Defendants. | Case No. 2:20-cv-08985-ODW-DFMx <br><br> **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR ENTRY OF DEFAULT JUDGMENT AS TO DEFENDANT NVC FUND, LLC** <br><br> Date: August 16, 2021 <br> Time: 1:30 p.m. <br> Ctrm: 5D <br> Judge: Hon. Otis D. Wright, II <br><br> Pretrial Conference: 09/12/2022 <br> Trial Date: 10/04/2022 |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................1

II.     STATEMENT OF FACTS ...........................................................2

    A.   The Fraudulent Section 3(a)(10) Transactions.......................2

    B.   The Fraudulent Stock Promotion and NVC Fund's Role ..................2

    C.   NVC Fund Has Defaulted ........................................4

III.    ARGUMENT ...........................................................................5

    A.   The SEC Has Complied with Fed. R. Civ. P. 55(a) and L.R. 55-1......6

    B.   The *Eitel* Factors Support Entry of Judgment against NVC Fund.......6

        1.   Possibility of prejudice to the SEC .................................6

        2.   Substantive merits and sufficiency of the Complaint ...............8

        3.   Amount at stake ............................................11

        4.   Possibility of disputed facts ...............................12

        5.   Possibility of excusable neglect ...............................13

        6.   Policy for deciding on the merits ............................13

    C.   The SEC Is Entitled to the Relief It Seeks .........................14

        1.   NVC Fund should be permanently enjoined..........................14

        2.   NVC Fund should pay a substantial civil penalty .................15

    D.   NVC Fund's Default Judgment Should Be Entered without Delay ..18

IV.     CONCLUSION...........................................................................22

# **TABLE OF AUTHORITIES**

## **CASES**

*Aaron v. SEC,*
   446 U.S. 680 (1980)..............................................................................10

*Aldabe v. Aldabe,*
   616 F.2d 1089 (9th Cir. 1980) ..............................................................5

*Avis Budget Group Inc. v. Cal. State Teachers' Ret. System,*
   552 U.S. 1162 (2008) ...........................................................................8

*Basic Inc. v. Levinson,*
   485 U.S. 224 (1988)..............................................................................9

*Benny v. Pipes,*
   799 F.2d 489 (9th Cir. 1986) .......................................................5, 6, 8

*Constr. Laborers Trust Funds for S. Cal. Admin. Co. v. Black Diamond*
   *Contr. Grp., Inc.,*
   No. SACV 17-770-JLS, 2017 WL 6496434 (C.D. Cal. Dec. 18, 2017)...........22

*Costa Brava P'ship III LP v. ChinaCast Educ. Corp.,*
   809 F.3d 471 (9th Cir. 2015) ..............................................................11

*Eitel v. McCool,*
   782 F.2d 1470 (9th Cir. 1986) ........................... 5, 6, 8, 11, 12, 13, 14

*Ernst & Ernst v. Hochfelder,*
   425 U.S. 185 (1976)..............................................................................10

Fed. R. Civ. P. 54(b) .......................................................................18, 22

*Frow v. De La Vega,*
   82 U.S. 552 (1872)..........................................................................18, 19

*Grumpy Cat Ltd. v. Grenade Beverage LLC,*
   No. SACV 15-2063-DOC (DFM), 2016 WL 7507768
   (C.D. Cal. Sept. 21, 2016) ..................................................................20

*Herman & MacLean v. Huddleston,*
   459 U.S. 375 (1983)..............................................................................10

*In re First T.D. & Investment, Inc.,*
   253 F.3d 520 (9th Cir. 2001) ..............................................18, 19, 21, 22

*j2 Glob. Inc. v. Fax87,*
   No. 13-05353 DDP (AJWX), 2016 WL 7260588
   (C.D. Cal. Dec. 15, 2016) ....................................................................21

*Landstar Ranger, Inc. v. Parth Enterprises, Inc.,*
   725 F. Supp. 2d 916 (C.D. Cal. 2010)..............................................6

*Lorenzo v. SEC,*
    139 S. Ct. 1094 (2019) .................................................................................8

*Mullane v. Central Hanover Trust Co.,*
    339 U.S. 306 (1950) .................................................................................13

*Penpower Technology Ltd. v. S.P.C. Technology,*
    627 F. Supp. 2d 1083 (C.D. Cal. 2008) .................................................7

*PepsiCo, Inc. v. Cal. Sec. Cans,*
    238 F. Supp. 2d 1172 (C.D. Cal. 2002) ................................6, 8, 11, 13

*PepsiCo, Inc. v. Triunfo-Mex. Inc.,*
    189 F.R.D. 431 (C.D. Cal. 1999) .............................................................5

*SEC v. Abacus Int'l Holding Corp.,*
    No. C 99–02191, 2001 WL 940913 (N.D. Cal. Aug.11, 2001) .......16

*SEC v. Baccam,*
    Case No. ED CV 17-0172 SJO (SPx), 2017 WL 5952168
    (C.D. Cal. June 14, 2017) ........................................................................17

*SEC v. Berger,*
    244 F. Supp. 2d 180 (S.D.N.Y. Nov. 13, 2001) .................................14

*SEC v. Burns,*
    816 F.2d 471 (9th Cir. 1987) ................................................................11

*SEC v. CFO-5,*
    No. 08-cv-01594-PAB-MEH, 2010 WL 1790414
    (D. Colo. May 4, 2010) ...........................................................................22

*SEC v. Dain Rauscher, Inc.,*
    254 F.3d 852 (9th Cir. 2001) ...................................................................9

*SEC v. Kenton Capital,*
    69 F. Supp. 2d 1 (D.D.C. 1998) ...........................................................15

*SEC v. Koracorp Industries, Inc.,*
    575 F.2d 692 (9th Cir. 1978) .................................................................14

*SEC v. Lion Capital Mgmt., LLC,*
    No. C 12-05116 WHA, 2013 U.S. Dist. LEXIS 157133
    (N.D. Cal. Nov. 1, 2013) ...........................................................................7

*SEC v. mUrgent Corp.,*
    SACV 11-0626 DOC (SSx), 2012 WL 630219 (C.D. Cal. Feb. 28, 2012) ......16

*SEC v. Murphy,*
    626 F.2d 633 (9th Cir. 1980) ...........................................................14, 16

*SEC v. Neman,*
    CV 12-03142-BRO (PLAx), 2016 U.S. Dist. LEXIS 193639
    (C.D. Cal. July 15, 2016) ..........................................................................7

iii

*SEC v. Pedras*,
  No. CV 13–7932 GAF (MRWx), 2014 WL 12597332
  (C.D. Cal. Apr. 16, 2014) ...........................................................................7

*SEC v. Platforms Wireless*,
  617 F.3d 1072 (9th Cir. 2010) .................................................................10

*SEC v. Rana Research, Inc.*,
  8 F.3d 1358 (9th Cir. 1993) .....................................................................10

*SEC v. Rubera*,
  350 F.3d 1094 (9th Cir. 2001) .................................................................10

*SEC v. Sells*,
  No. C-11-4941, 2012 WL 3242551 (N.D. Cal. Aug. 10, 2012).....................9

*SEC v. Zandford*,
  535 U.S. 813 (2002).................................................................................10

*SEC v. Zouvas*,
  2016 U.S. Dist. Lexis 161255 (S.D. Cal. Nov. 21, 2016) .........................10

*Shanghai Automation Instrument Co. v. Kuei*,
  194 F. Supp. 2d 995 (N.D. Cal. 2001).......................................18, 19, 21

*Simpson v. AOL Time Warner, Inc.*,
  452 F.3d 1040 (9th Cir. 2006) ...................................................................8

*Siwiec v. Shyun Sun*,
  No. CV 12-6410-CBM (MANx), 2013 WL 12130002
  (C.D. Cal. Feb. 20, 2013) ........................................................................22

*TeleVideo Sys., Inc. v. Heidenthal*,
  826 F.2d 915 (9th Cir. 1987) ...............................................................6, 12

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976).....................................................................................9

*United States v. Odessa Union Warehouse Coop*,
  833 F.2d 172 (9th Cir. 1987) ...................................................................14

**FEDERAL STATUTES**

**Securities Act of 1933**

Section 3(a)(10)
  [15 U.S.C. § 77c(a)(10)]...............................................................2, 13, 19

Section 5(a)
  [15 U.S.C. § 77e(a)]..................................................................................18

Section 5(c)
  [15 U.S.C. § 77e(c)]..................................................................................18

Section 17(a)
  [15 U.S.C. § 77q(a)] .................................................................................18

**Securities Exchange Act of 1934**

Section 10(b)
    [15 U.S.C. § 78j(b)] ................................................1, 8, 10, 14, 18, 19

Section 21(d)
    [15 U.S.C. § 78u(d)] ............................................................14

Section 21(d)(1)]
    [15 U.S.C. § 78u(d)(1)] ........................................................14

Section 21(d)(3(B)(ii)
    [15 U.S.C. § 78u(d)(3)(B)(ii)] ................................................16

Section 21(d)(3)
    [15 U.S.C. § 78u(d)(3)] ....................................................11, 15

Section 21(d)(3)(B)
    [15 U.S.C. § 78u(d)(3)(B)] ................................................15, 16

Section 21(d)(3)(B)(i)
    [15 U.S.C. § 78u(d)(3)(B)(i)] ................................................16

Section 21(d)(3)(B)(iii)
    [15 U.S.C. § 78u(d)(3)(B)(iii)] ........................................11, 16, 17

**FEDERAL REGULATIONS**

17 C.F.R. § 201.1001(b) ....................................................12, 17

Rule 10b-5
    [17 C.F.R. § 240.10b-5] ................................................1, 8, 10, 14

Rule 10b-5(a)
    [17 C.F.R. § 240.10b-5(a)] ................................................8, 18

Rule10b-5(b)
    [17 C.F.R. § 240.10b-5(b)] ....................................................19

Rule 10b-5(c)
    [17 C.F.R. § 240.10b-5(c)] ................................................8, 18

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 12(a) ............................................................4

Fed. R. Civ. P. 54(c) ........................................................6, 14

Fed. R. Civ. P. 55(a) ......................................................1, 5, 6

Fed. R. Civ. P. 55(b) ........................................................5, 13

Fed. R. Civ. P. 55(b)(2) ....................................................1, 5

v

**<u>LOCAL RULES</u>**

Local Rule 55-1..................................................................................5, 6

## I.     <u>INTRODUCTION</u>

Plaintiff Securities and Exchange Commission ("SEC") renews its motion for entry of a default judgment for injunctive and other relief against defendant NVC Fund, LLC ("NVC Fund") pursuant to Fed. R. Civ. P. 55(b)(2).  At the SEC's request, the Clerk entered a default against NVC Fund on December 16, 2020 pursuant to Fed. R. Civ. P. 55(a) because NVC Fund failed to plead or otherwise defend in this action.  Dkt. No. 35.

The SEC has alleged that NVC Fund, through defendant Frank Ekejija ("Ekejija"), participated in the second part of a two-part scheme involving three microcap issuers controlled by a common CEO, defendant Patrick Jevon Johnson ("Johnson"): Cherubim Interests, Inc. ("CHIT"); PDX Partners, Inc. ("PDXP"); and Victura Construction Group, Inc. ("VICT") (collectively, the "Issuers").  Part one of the scheme involved conducting fraudulent Section 3(a)(10) transactions to obtain and sell unregistered shares of CHIT and VICT to the public markets.  Part two of the scheme consisted of making false and misleading public statements to pump the stock of CHIT, VICT and PDXP, which resulted in a spike in the Issuers' stock price and volume.

The judgments sought by the SEC include the following relief:  (1) permanent injunctions prohibiting future violations by NVC Fund of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; and (2) a civil penalty of $963,837.

The SEC previously moved for default judgment against NVC Fund on March 2, 2021, Dkt. No. 60, which, on March 26, 2021, this Court denied, without prejudice, as premature because of the possibility that the answering defendants were similarly situated, Dkt. No. 71 at 1.  Since that time, the Court has entered default judgment against Ekejija, the sole owner, trustee, chairman, and sole controller of NVC Fund, as to the same violations alleged against NVC Fund, finding that "the risk of inconsistent judgments is not sufficiently extreme" to any similarly situated defendant, including defendant Johnson, "to bar entry of default judgment."  Dkt. No.

87 at 7 (the "July 2 Order").  Given the July 2 Order and the findings therein, as well as the points and authorities identified below, the Court should similarly find that there is no possibility of inconsistent judgments as to the remaining defendants and enter default judgment against NVC Fund.

## II.   STATEMENT OF FACTS

### A.   The Fraudulent Section 3(a)(10) Transactions

The Complaint alleges that from November 2017 to January 2018, Johnson and defendant Charles Everett ("Everett") – though not NVC Fund or Ekejija – fabricated documents to create fictitious debts to facilitate the fraudulent offer and sale of CHIT and VICT stock to the public markets in transactions purportedly exempt from registration under Section 3(a)(10) of the Securities Act [15 U.S.C. § 77c(a)(10)] ("Section 3(a)(10)").  *See* Dkt. No. 1 (the "Complaint") ¶ 5.  A Delaware Corporation, Company A, obtained and sold the stock into the market for gross proceeds of approximately $568,000.  *Id*. ¶ 7.  Everett received kickbacks from the proceeds paid by Company A for the fake VICT debt, and Johnson avoided repaying a debt CHIT owed after CHIT was pre-paid for a construction job that it then failed to perform.  *Id.*

### B.   The Fraudulent Stock Promotion and NVC Fund's Role

The Complaint further alleges that from January to February 2018, Johnson, Ekejija, and Ekejija's company NVC Fund (that he also controlled) engaged in a fraudulent scheme to pump the Issuers' stock.  *Id.* ¶¶ 14, 183.

The Complaint alleges that Associate A introduced Johnson to Ekejija in December 2017.  *Id.* ¶ 187.  Associate A told Ekejija that the potential asset deals between the Issuers and Ekejija's entities could dramatically increase the Issuers' stock price, possibly allow them to tap into a billion dollar line of credit, and potentially permit the Issuers to list their stock on NASDAQ.  *Id.* ¶ 188.

In a series of six press releases and a Form 8-K (plus amendment) filed with the SEC between January and February 2018, the Issuers and Johnson made false and misleading public statements, all approved by Ekejija and NVC Fund, regarding the

1   Issuers' financial wherewithal in order to pump the Issuers' stock.  *Id.* ¶¶ 8-9.  The

2   press releases stated that the Issuers purportedly acquired $700 million in assets from

3   NVC Fund and that NVC Fund's parent, NVC Fund Holding Trust, owned "trillions"

4   of dollars in assets.  *Id.* ¶ 184.  In exchange, the Issuers agreed to transfer shares of

5   their preferred stock to NVC Fund.  *Id.*

6        The press releases stated that the touted nine-figure valuations had been

7   audited.  *Id.* ¶¶ 200, 212(d), 213(d), 214(d).  The press releases also represented the

8   legitimacy of the valuation and credit rating of NVC Fund Holding Trust.  *Id.* ¶¶ 211-

9   212, 212(b)-(c), 213, 213(b)-(c), 214, 214(b)-(c).

10       These statements were false and material.  No audit was conducted of NVC

11  Fund Holding Trust or NVC Fund's financial statements.  *Id.* ¶¶ 203-208.  Instead,

12  Standard and Partners, the entity that purportedly audited the financial statements,

13  prepared a report which specifically stated that it "did not express an audit opinion"

14  of NVC Fund Holding Trust and that its review was "substantially less in scope than

15  an audit conducted in accordance with International Standards on Auditing."  *Id.* ¶¶

16  201-207.  Similarly, neither the valuation report nor the credit rating report were

17  legitimate.  *Id.* ¶¶ 221-229.  The valuation report was not legitimate because it was

18  based on the same unaudited Standard and Partners review.  *Id.*  And the credit rating

19  report was not legitimate because it was based on the valuation report.  *Id.*  A

20  reasonable investor would find it important to know that these statements were false.

21  *Id.* ¶¶ 209-210, 219-220, 231, 241-243.

22       NVC Fund, through Ekejija, knew or was reckless in not knowing, that it was

23  pumping the Issuers' stock with materially false and misleading information.  *Id.* ¶¶

24  244-250.  NVC Fund, through Ekejija, knew or was reckless in not knowing that the

25  purported asset deals would dramatically increase the Issuers' stock price, possibly

26  allowing Ekejija to tap into a billion dollar line of credit, and potentially permit the

27  Issuers to list their stock on NASDAQ.  *Id.* ¶ 245.  NVC Fund, through Ekejija, also

28  knew or was reckless in not knowing that the statements regarding the audited

financial statements were false because (1) the Standard and Partners report specifically stated that it was not an audit and instead was a "financial statement review"; (2) Ekejija told Associate A that a "financial statement review" was not a "Financial Statement Audited Report"; and (3) Ekejija admitted during investigative testimony that he did not get an audited report. *Id.* ¶ 248. NVC Fund, through Ekejija, also knew or was reckless in not knowing that the statements regarding the valuation and credit rating were false because the valuation had to be based on audited financial statements (which it was not), the credit rating relied on the asset valuation, neither the asset valuation nor the credit rating were supported by an audit, and Ekejija pressured Rater B to revise the rating to "AAA". *Id.* ¶ 249.

Despite knowing the falsity of these statements, Ekejija reviewed and approved them. *Id.* ¶¶ 8, 190, 246.

Following these public announcements and CHIT's Form 8-K filings, the stock price for the Issuers and their trading volume increased. *Id.* ¶¶ 9, 193, 267. Because of the concern over the inaccuracy of the Issuers' disclosures and the possibility that their stock was being manipulated, the SEC suspended trading in the securities of the Issuers on February 15, 2018, for ten business days. *Id.* ¶¶ 183, 194.

### C. NVC Fund Has Defaulted

The SEC completed service on NVC Fund on October 3, 2020, and filed proof of service with the Court on October 7, 2020, and an amended proof of service on December 15, 2020. Dkt. Nos. 11, 33. As a result, pursuant to Rule 12(a) of the Federal Rules of Civil Procedure, NVC Fund was required to serve and file a response to the Complaint no later than October 26, 2020. On November 10, 2020, upon Ekejija's request, Dkt. No. 18, which the Commission did not oppose, Dkt. No. 20, the Court extended NVC Fund's answer deadline to November 25, 2020, Dkt. No. 21. To date, NVC Fund has filed no responsive pleading. On December 11, 2020, the SEC requested that the Clerk enter NVC Fund's default. Dkt. No. 30. The default was entered on December 16, 2020. Dkt. No. 35.

III.   **ARGUMENT**

Fed. R. Civ. P. 55(b) provides for entry of a default judgment by the Court following entry of a default by the court clerk under Rule 55(a).  A failure to make a timely answer to a properly served complaint will justify the entry of a default judgment. *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986).  Local Rule 55-1 requires that an application for default judgment be accompanied by a declaration setting forth the following information: (1) when and against which party default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required by Fed. R. Civ. P. 55(b)(2).  The Declaration of Michael R. Sew Hoy filed concurrently herewith ("Sew Hoy Decl.") sets forth all of this information.[1]

Entry of default judgment is governed by Fed. R. Civ. P. 55(b) and is left to the trial court's sound discretion.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  As the Ninth Circuit held in *Eitel v. McCool*, a district court should consider the following factors in exercising its discretion to award a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

782 F.2d 1470, 1471-72 (9th Cir. 1986).  "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo, Inc. v. Triunfo-Mex. Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

---

[1] Factors (3) and (4) are not applicable because NVC Fund is not a natural person.

A party seeking a default judgment must state a claim upon which it may recover. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002). After a default has been entered by the court clerk, the well-pleaded factual allegations of the Complaint are taken as true, except for those allegations relating to damages. *Id., citing TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987); *see also Benny*, 799 F.2d at 495. Here, the SEC has no claim or allegations regarding damages. Rather, it seeks a civil penalty, as discussed below.

### A.    The SEC Has Complied with Fed. R. Civ. P. 55(a) and L.R. 55-1

The SEC has satisfied the procedural requirements for a default judgment pursuant to Fed. R. Civ. P. 55(a) and Local Rule 55-1. In the pending action, the SEC has: (1) served NVC Fund with the Summons and Complaint (Dkt. Nos. 11, 33); Sew Hoy Decl. ¶ 2; (2) caused the Clerk to enter a default against NVC Fund for failure to answer (Dkt. No. 35); Sew Hoy Decl. ¶¶ 2-3; (3) given notice of this Motion for Entry of Default Judgment (Proof of Service attached hereto and to Notice of Motion); and (4) notified NVC Fund in the Notice of Motion and Motion, as well as in the Complaint, of the relief requested; Sew Hoy Decl. ¶ 17. Additionally, because the SEC does not request relief that differs from or exceeds that prayed for in the Complaint, the application for default judgment complies with Fed. R. Civ. P. 54(c). Accordingly, the Court need only weigh the *Eitel* factors set forth above to determine whether default judgment is appropriate.

### B.    The *Eitel* Factors Support Entry of Judgment against NVC Fund

#### 1.    Possibility of prejudice to the SEC

With respect to the first *Eitel* factor, the possibility of prejudice exists where "[i]f Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery." *PepsiCo*, 238 F. Supp. 2d at 1177; *see also Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (granting default judgment, where "[d]enying default judgment here would leave [plaintiff] without a proper remedy"); *Penpower Technology Ltd. v. S.P.C.*

1 *Technology*, 627 F. Supp. 2d 1083, 1088-89 (C.D. Cal. 2008) (granting permanent

2 injunction by default judgment, noting that "[a]ccepting the allegations in the

3 Complaint as true, Plaintiffs would be prejudiced absent entry of default judgment").

4       Here, the SEC would suffer prejudice if the default judgment were not entered

5 because the SEC would be without other recourse for relief unless it incurs

6 substantial time and expense to proceed by a motion for summary judgment or by

7 trial. *See* July 2 Order at 5. The possibility of prejudice is enhanced by the fact that

8 NVC Fund and Ekejija have defaulted, thereby admitting the averments of the

9 Complaint. *SEC v. Neman*, CV 12-03142-BRO (PLAx), 2016 U.S. Dist. LEXIS

10 193639, at *11 (C.D. Cal. July 15, 2016) ("[G]iven that Defendant has 'elected not to

11 take part in the litigation, the Commission will be unable to fulfill its mandate to

12 protect the investing public in the absence of a default judgment.'") (*quoting SEC v.

13 Lion Capital Mgmt., LLC*, No. C 12-05116 WHA, 2013 U.S. Dist. LEXIS 157133, at

14 *7 (N.D. Cal. Nov. 1, 2013)); *SEC v. Pedras*, No. CV 13–7932 GAF (MRWx), 2014

15 WL 12597332, at *4 (C.D. Cal. Apr. 16, 2014) ("If default judgment were not

16 entered, Plaintiff would have no way to enforce the Securities Act or the Exchange

17 Act against Defaulting Defendants."). Prejudice is further enhanced because Ekejija

18 and NVC Fund were only involved in one part of the scheme, pumping the Issuers'

19 stock with false statements, so there is no need to delay entry of default judgment

20 against NVC Fund (default judgment has already been entered against Ekejija) until

21 the resolution of the other part of the scheme, the Section 3(a)(10) fraud. Moreover,

22 no other defendant will be prejudiced. The only other defendant charged in

23 connection with the pump scheme (Johnson) has not denied falsity or materiality,

24 only that he/Johnson lacked the knowledge or the requisite level of scienter of the

25 false statement Ekejija and NVC Fund provided to him. *See* Answer of Defendant

26 Patrick Johnson (Dkt. No. 37, "Johnson Answer") at ¶ 57, p. 10; *infra* at 18-22.

27 Thus, if default judgment is not entered, the SEC, other defendants, and third party

28 witnesses will be required to spend resources on proving elements of the SEC's

claims that are *not* contested by any answering defendant, perhaps even taxing the Court's resources in resolving disputes raised by the same issues.

### 2. Substantive merits and sufficiency of the Complaint

Together, the second and third *Eitel* factors "require that a plaintiff state a claim on which the [plaintiff] may recover." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d at 1175 (citations omitted). Well-pleaded allegations are taken as admitted on a default judgment. *Benny*, 799 F.2d at 495. In order to assess whether the SEC has stated a claim, it is necessary to review the allegations of the Complaint and determine whether, if proven, they would establish violations of the antifraud provisions.

### a. The SEC has stated claims for violations of the anti-fraud provisions

The Complaint states claims for violations of the anti-fraud provisions of the federal securities laws. Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, prohibit fraud in connection with the purchase or sale (Section 10(b) and Rule 10b-5) of any security. The conduct prohibited under these provisions includes employing any device, scheme or artifice to defraud (Rule 10b-5(a)); or engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person (Rule 10b-5(c)).

A defendant who "disseminate[s] a false or misleading statement to potential investors with the intent to defraud" can be liable for a scheme to defraud under Rule 10b-5(a) and (c). *Lorenzo v. SEC*, 139 S. Ct. 1094, 1100 (2019); *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006) (To be liable for a scheme to defraud, a defendant "must have engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme."), *vacated on other grounds sub nom., Avis Budget Group Inc. v. Cal. State Teachers' Ret. System*, 552 U.S. 1162 (2008); *see also SEC v. Sells*, No. C-11-4941, 2012 WL

3242551, at *7 (N.D. Cal. Aug. 10, 2012).[2]  A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision.  *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  *See also SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001).

Here, the Complaint alleges that NVC Fund, through Ekejija, participated in a deceptive scheme.  *See* July 2 Order at 5-6 (finding that "the SEC allege[d] facts sufficient to establish that Ekejija violated Section 10(b) and Rule 10b-5," the same violations alleged against NVC Fund).  NVC Fund approved and provided the false information concerning the audit, valuation and credit rating of NVC Fund and/or NVC Fund Holding Trust.  Dkt. No. 1 ¶¶ 8, 190, 244-250.  NVC Fund has defaulted, Dkt. No. 35, and default judgment has been entered against Ekejija, the individual that controlled NVC Fund, Dkt. No. 87.

A reasonable investor would find it important to an investment decision whether NVC Fund or NVC Fund Holding Trust were audited during the relevant time period because, among other things, the Issuers were purchasing assets of NVC Fund and NVC Fund Holding Trust.  A reasonable investor would find it important to an investment decision whether the valuation of NVC Fund Holdings Trust was supported by audited financial statements because, among other things, statements about the value of NVC Fund Holdings Trust affected the value of NVC Fund, the assets of which were being purchased by the Issuers.  Finally, it would have been important to a reasonable investor to know whether the valuation and credit rating of NVC Fund Holdings Trust and NVC Fund, and thus the assets to be acquired by

---

[2] In addition, the SEC must prove certain jurisdictional elements as well, which are also established with the allegations in the Complaint.  Specifically, defendants used means or instrumentalities of interstate commerce, the mails, or the facilities of a national securities exchange, in that they utilized press releases, Form 8-K, and Form 8-K/A and the securities sold on OTC Link (previously "Pink Sheets") operated by OTC Markets Group, Inc.  Dkt. No. 1 ¶¶ 8-9, 16-18, 278.

1   CHIT, were based on audited financials.

2        NVC Fund's fraudulent conduct was also "in connection with" the purchase or

3 sales of securities, as required by Section 10(b) and Rule 10b-5 of the Exchange Act,

4 because the allegations of the Complaint establish that the press releases that Ekejija

5 and NVC Fund approved were publicly disseminated in a manner reasonably

6 calculated to influence the investing public while the Issuers traded in the public

7 markets. *SEC v. Rana Research, Inc.*, 8 F.3d 1358, 1362 (9th Cir. 1993) (citations

8 omitted) (false and misleading public statements while there is simultaneous public

9 trading are made "in connection with"); *see SEC v. Zandford*, 535 U.S. 813, 822

10 (2002). *See also SEC v. Zouvas*, 2016 U.S. Dist. Lexis 161255, at *24-26 (S.D. Cal.

11 Nov. 21, 2016) (materially false and misleading statements in a microcap scheme to

12 transfer agent and brokerage firm in order to facilitate the deposit and sale of stock

13 meets the "in connection with" requirement).

14        **b.**    **NVC Fund acted with the requisite state of mind**

15        Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

16 require a showing of scienter. *Aaron v. SEC*, 446 U.S. 680, 701-02 (1980).

17        Scienter is a "mental state embracing intent to deceive, manipulate or defraud."

18 *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). In the Ninth Circuit,

19 scienter may be established by a showing of recklessness. *SEC v. Rubera*, 350 F.3d

20 1094 (9th Cir. 2001). Reckless conduct:

21       may be defined as a highly unreasonable omission, involving not merely

22       simple, or even inexcusable negligence, but an extreme departure from the

23       standards of ordinary care, and which presents a danger of misleading buyers

24       or sellers that is either known to the defendant or is so obvious that the actor

25       must have been aware of it.

26 *SEC v. Platforms Wireless*, 617 F.3d 1072, 1096 (9th Cir. 2010) (internal citations

27 omitted). Proof of recklessness may be inferred from circumstantial evidence.

28 *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390-91, n.30 (1983); *SEC v.*

*Burns*, 816 F.2d 471, 474 (9th Cir. 1987).

Ekejija's scienter may be imputed to NVC Fund. *See Costa Brava P'ship III LP v. ChinaCast Educ. Corp.*, 809 F.3d 471, 476 (9th Cir. 2015) (holding that senior controlling officer's scienter can be imputed to an entity). Here the Complaint alleges that NVC Fund, through Ekejija, knew, or was reckless in not knowing, that its deceptive conduct was material and operated as a scheme to defraud. Dkt. No. 1 ¶¶ 244-250, 279. NVC Fund, through Ekejija, knew that the purported asset deals would advantage Ekejija, *id.* ¶ 245, that the statement regarding audited financials was false because, in part, the report on which that statement was based specifically stated that it was not an audit, and Ekejija admitted in investigative testimony that he did not receive an audit, *id.* ¶ 248, and that the valuation and credit rating were not credible because he knew that neither was supported by audited financial statements and he pressured Rater B to revise his rating to "AAA," *id.* ¶ 249.

### 3. Amount at stake

Pursuant to the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d at 1176; *see also Eitel*, 782 F.2d at 1471-72. There is no question that NVC Fund's conduct was serious, and that following the public statements the stock price for each of the Issuers and their trading volume increased significantly, thus creating a substantial risk of loss. As explained below, *infra* at 15-18, the SEC seeks a third-tier civil money penalty for NVC Fund's violation under the Exchange Act. *See* 15 U.S.C. § 78u(d)(3). When enacted, 15 U.S.C. § 78u(d)(3)(B)(iii) provided that a third-tier civil money penalty "shall not exceed … $500,000 for any other person." However,

> For violations after November 2, 2015: The Federal Civil Penalties Inflation Adjustment Act, as amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (28 U.S.C. 2461 note), requires that civil monetary penalties be adjusted on an annual basis for inflation.

Pursuant to this requirement, the maximum amounts of all civil monetary penalties under the Securities Act of 1933, the Securities Exchange Act of 1934, … will be adjusted annually for inflation. Notice of these adjusted penalty amounts will be published by the Commission in the Federal Register on or before January 15 of each calendar year and will be available, along with the Commission's prior inflation adjustments, on the Commission's Web site at https://www.sec.gov/enforce/civil-penalties-inflation-adjustments.htm. The adjusted penalty amounts will apply to all penalties imposed after the effective date of the adjustment … .

17 C.F.R. § 201.1001(b), attached hereto as Sew Hoy Decl. ¶ 11, Exhibit 2. At the time the Complaint was filed in September 2020, the maximum third-tier civil penalty for NVC's violations (which occurred after November 3, 2015) is $963,837 per violation. *See* 85 Fed. Reg. 1833-35, attached hereto as Sew Hoy Decl. ¶ 12, Exhibit 3. Accordingly, the SEC seeks a civil penalty in the amount of $963,837 against NVC Fund.[3]

### 4.    Possibility of disputed facts

The fifth *Eitel* factor considers the possibility of a dispute as to any material facts in the case. Upon entry of default, all well-pleaded facts in the Complaint are taken as true, except those relating to damages. *TeleVideo*, 826 F.2d at 917-18 (citations and quotations omitted). As explained above, the allegations in the Complaint establish that NVC Fund violated the federal securities laws (and the Court has already entered judgment against Ekejija for violating those same laws), and, as explained below, Johnson – the only other defendant who is charged in connection with the pump scheme – does not contest falsity or materiality of the misrepresentations. Indeed, entering default judgment will have no effect on either

---

[3] The amount for a third tier civil penalty due to this violation under the Exchange Act was updated by regulation to $975,000 on January 15, 2021. 86 Fed. Reg. 2716-18, attached hereto as Sew Hoy Decl. ¶ 13, Exhibit 4.

further litigation with Johnson or further litigation involving the Section 3(a)(10) fraudulent transactions.  Thus, there are no disputed facts, and consideration of this factor favors granting a default judgment.  *See* July 2 Order at 6 ("[T]he fifth … factor[] … favor[s] default judgment.").

### 5.    Possibility of excusable neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect.  Due process requires that all interested parties be given notice reasonably calculated to apprise them of the pendency of the action and be afforded an opportunity to present their objections before a final judgment is rendered. *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950).  In the instant case, the SEC served NVC Fund with the Complaint and the request for entry of default by delivering copies to the last known mailing address of Ekejija, NVC Fund's sole owner, trustee, and chairman.  Dkt. Nos. 11, 30, 33, 34.  Additionally, NVC Fund is being served with this Notice of Motion and copies of the pleadings accompanying this Motion for Entry of Default Judgment.  In light of the various notifications it has received regarding the lawsuit pending against it, Ekejija's acknowledgement that the Complaint has been received, and the period of time that has elapsed since this action was filed on September 30, 2020, the possibility of excusable neglect is remote at best.  Moreover, Ekejija controls NVC Fund, Compl. at ¶14, and, as this Court found, "Ekejija's refusal to Answer the Complaint or comply with this Court's orders reduces the possibility of a material factual dispute and eliminates the possibility that the default was the result of excusable neglect."  July 2 Order at 6.  Therefore, the sixth *Eitel* factor favors granting a default judgment.

### 6.    Policy for deciding on the merits

Finally, the mere existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor, deciding on the merits, is not alone dispositive.  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d at 1177.  Indeed, the "Defendant's failure to answer [the] Complaint makes a decision on the merits impractical, if not impossible."  *Id*.

Therefore, "[u]nder Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *Id*.  Thus, the seventh *Eitel* factor does not preclude the Court from entering default judgments against NVC Fund.  *See* July 2 Order at 6 ("[T]he seventh factor does not preclude default judgment.").

## C.     The SEC Is Entitled to the Relief It Seeks

Fed. R. Civ. P. 54(c) allows only the relief prayed for in the Complaint to be awarded to the plaintiff in a default judgment.  In the Complaint, the SEC sought a judgment permanently enjoining NVC Fund from future violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5; and ordering it to pay a civil penalty.  The SEC seeks the same relief in this motion.

### 1.     NVC Fund should be permanently enjoined

Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d)(1), provides that upon proper showing, a permanent injunction shall be granted in an enforcement action brought by the SEC.  To obtain an injunction, the SEC must establish that there is a reasonable likelihood of future violations.  *See SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).  Whether a likelihood of future violations exists depends upon the totality of the circumstances.  *Id.*  The existence of past violations may give rise to an inference that there will be future violations.  *See id.*; *see also United States v. Odessa Union Warehouse Coop*, 833 F.2d 172, 176 (9th Cir. 1987); *SEC v. Koracorp Industries, Inc.*, 575 F.2d 692, 698 (9th Cir. 1978).  Courts also consider factors such as the degree of scienter involved, the isolated or recurrent nature of the violative conduct, the defendant's recognition of the wrongful nature of the conduct, the likelihood that, because of the defendant's occupation, future violations may occur, and the sincerity of defendant's assurances (if any) against future violations.  *Murphy*, 626 F.2d at 655.  *See also SEC v. Berger*, 244 F. Supp. 2d 180, 193 (S.D.N.Y. Nov. 13, 2001) (A permanent injunction may be particularly appropriate where a violation

14

was "founded on systemic wrongdoing, rather than an isolated occurrence," or involved a "high degree of scienter.").

A reasonable likelihood exists that, absent a permanent injunction, NVC Fund may commit future securities violations.  By failing to file an answer or otherwise participate in this civil action, NVC Fund (and Ekejija) declined to offer this Court any assurances that it will not now or in the future commit violations of the federal securities laws; it has also failed to recognize the wrongfulness of its conduct.  *See* July 2 Order at 8 ("Ekejija vigorously refuses to recognize the wrongful nature of his conduct, making it likely to recur, particularly in light of his ownership and control of NVC Fund," and "as he refuses to Answer the Complaint, Ekejija offers no assurances against future violations.").

Moreover, the Complaint alleges that NVC Fund, through Ekejija, exhibited the highest degree of scienter.  Dkt. No. 1 ¶¶ 244-250, 279; *see* July 2 Order at 8 ("The SEC's allegations establish Ekejija had a substantial degree of scienter.").  Specifically, and as set forth in detail above, Ekejija, and thus NVC Fund, knew, based on communications with the CPA firm and the credit rater, that the valuation had not been audited, and that the credit rating was supported by neither an audit nor any legitimate factual basis. Dkt. No. 1 ¶¶ 244-250, 279.  Nevertheless, Ekejija and NVC Fund approved the statements for public release.  For these reasons, this Court should issue a judgment permanently enjoining NVC Fund from future violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

### 2.  NVC Fund should pay a substantial civil penalty

The SEC also seeks an order requiring NVC Fund to pay a civil penalty.  NVC Fund violated the Exchange Act, and so is liable for penalties under Section 21(d)(3) of the Exchange Act.  *See* 15 U.S.C. § 78u(d)(3).  Civil penalties are meant to punish wrongdoers and to deter them and others from future securities law violations. *See SEC v. Kenton Capital*, 69 F. Supp. 2d 1, 17 (D.D.C. 1998).

Under Section 21(d)(3)(B) of the Exchange Act, the amount of any civil

15

penalty "shall be determined by the court in light of the facts and circumstances."  15 U.S.C. § 78u(d)(3)(B).  Because civil penalties, like permanent injunctions, are imposed to deter the wrongdoer from similar conduct in the future, in assessing civil penalties, courts frequently apply the factors set forth in *Murphy*, 626 F.2d 633, used to establish the need for injunctive relief.  *See*, *e.g.*, *SEC v. Abacus Int'l Holding Corp.*, No. C 99–02191, 2001 WL 940913, at *5 (N.D. Cal. Aug.11, 2001).  Those factors are:  (i) the degree of scienter involved; (ii) the isolated or recurrent nature of the infraction; (iii) the defendant's recognition of the wrongful nature of his conduct; (iv) the likelihood, because of the defendant's professional occupation, that future violations might occur; and (v) the sincerity of his assurances against future violations.  *See Murphy*, 626 F.2d at 655.

The Exchange Act provides that penalties should be assessed according to a three-tier system.  *See* 15 U.S.C. § 78u(d)(3)(B).  First-tier penalties may be imposed for any violation of the Exchange Act.  *See id.* § 78u(d)(3)(B)(i).  Second-tier penalties apply to violations that "involved fraud, deceit, manipulation or deliberate or reckless disregard of a regulatory requirement."  *Id.* § 78u(d)(3)(B)(ii).  Third-tier penalties apply to violations that (i) involve "fraud, deceit, manipulation, or reckless disregard of a regulatory requirement" and (ii) "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."  *Id.* § 78u(d)(3)(B)(iii).  Each tier provides that a penalty cannot exceed the greater of either a specific statutory amount, or "the gross amount of pecuniary gain to such defendant as the result of the violation."  *Id.* § 78u(d)(3)(B); *see, e.g.*, *SEC v. mUrgent Corp.*, SACV 11-0626 DOC (SSx), 2012 WL 630219, at **2-3 (C.D. Cal. Feb. 28, 2012) (awarding penalties in amounts tied to total funds raised by boiler room offering).

Here, each of the *Murphy* factors weighs heavily in favor of imposing a third tier penalty against NVC Fund.  The SEC seeks a specific, inflation-adjusted statutory amount against NVC Fund in the amount of $963,837 (and not the gross amount of pecuniary gain).

1    NVC Fund, through Ekejija, acted with a high level of scienter, defrauding the

2    investors who purchased the Issuers' securities, and created a substantial risk of loss.

3    *See* July 2 Order at 8 ("The SEC's allegations establish Ekejija had a substantial

4    degree of scienter.").  In addition, by failing to appear and defend itself, NVC Fund

5    has not given any assurances that it will not commit future violations of the federal

6    securities laws and it has failed to recognize the wrongfulness of its conduct.  *See id.*

7    ("Ekejija vigorously refuses to recognize the wrongful nature of his conduct, making

8    it likely to recur, particularly in light of his ownership and control of NVC Fund,"

9    and "as he refuses to Answer the Complaint, Ekejija offers no assurances against

10   future violations.").  Under the circumstances, the SEC requests that the Court order

11   NVC Fund to pay a third tier civil penalty.

12   Furthermore, since it has defaulted, NVC Fund has provided no evidence of

13   any inability to pay such an award—nor any evidence of its financial condition

14   whatsoever—further warranting the recommended penalty.  *See, e.g., SEC v.*

15   *Baccam*, Case No. ED CV 17-0172 SJO (SPx), 2017 WL 5952168, at *11 (C.D. Cal.

16   June 14, 2017) (awarding civil penalty on default judgment motion, finding that "the

17   imposition of a third-tier penalty is appropriate 'to adequately serve the deterrent

18   function of the civil penalty provision'" (citations omitted)).

19   As explained above, the SEC seeks a statutory third tier penalty in the amount

20   of $963,837 pursuant to 15 U.S.C. § 78u(d)(3)(B)(iii), 17 C.F.R. § 201.1001(b), and

21   the penalty amounts, adjusted for inflation, in place when the Complaint was filed,

22   *see* 85 Fed. Reg. 1833-35, attached hereto as Sew Hoy Decl. ¶ 12, Exhibit 3; *see*

23   *supra* at 11-12.[4]  These amounts are commensurate with the seriousness of its

24   misconduct.  Given the egregiousness of NVC Fund's conduct and the public policies

25   advanced by such relief, a balancing of the equities favors imposing these monetary

26

27   _____

28   [4] As explained in footnote 4, the amount for a third tier civil penalty due to this
violation under the Exchange Act was updated by regulation to $975,000 on January
15, 2021.

1    remedies against it.

2    **D.    NVC Fund's Default Judgment Should Be Entered without Delay**

3    Fed. R. Civ. P. 54(b) provides that "the court may direct entry of a final

4    judgment as to one or more, but fewer than all, claims or parties only if the court

5    expressly determines that there is no just reason for delay."  Thus, where delay is

6    necessary to avoid an inconsistent result as to similarly situated defendants, Fed. R.

7    Civ. P. 54(b) requires deferring the entry of default judgment.  *See In re First T.D. &*

8    *Investment, Inc.*, 253 F.3d 520, 532 (9th Cir. 2001) (reversing entry of default

9    judgments on a legal theory that was rejected by the court as to answering defendants

10   in the same action) (*citing Frow v. De La Vega*, 82 U.S. 552 (1872)).  However,

11   provided that "uniformity of liability is not logically required by the facts and theories

12   of the case, the risk of inconsistent judgments is not sufficiently extreme to bar entry

13   of default judgment as a matter of law."  *Shanghai Automation Instrument Co. v.*

14   *Kuei*, 194 F. Supp. 2d 995, 1008-09 (N.D. Cal. 2001) (entering default judgment

15   against defaulting defendants, notwithstanding that one defendant answered, finding

16   that because his liability "turns on the facts proven with respect to his own conduct

17   and involvement…differing judgments would not necessarily be illogical…").  As the

18   Court found that default judgment could be entered against Ekejija without a

19   "sufficiently extreme" "risk of inconsistent judgments" as to the other defendants, July

20   2 Order at 7, the Court should do the same here with Ekejija's entity, NVC Fund,

21   which faced the same charges and whose liability is based on Ekejija's conduct.

22   As an initial matter, the Complaint does not seek joint liability or even joint

23   and several liability.  Nor does the SEC seek disgorgement against NVC Fund, so

24   there is no requirement that the determination of its and any other defendant's

25   liability be identical.  And NVC Fund's liability depends in no way on the liability of

26   the answering defendants: Everett or Johnson.  Everett is charged with violating

27   Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange

28   Act and Rules 10b-5(a) and (c) thereunder related to a fraudulent Section 3(a)(10)

18

scheme.  There is no overlap – factually or legally – between the Complaint's allegations against Everett with respect to the fraudulent Section 3(a)(10) scheme and those against NVC Fund with respect to the fraudulent pump scheme.  Accordingly, defendants NVC Fund and Everett are not "similarly situated" under *First T.D.*

The same is true as to Johnson.  Johnson's liability is not tied to NVC Fund or Ekejija's.  *See* July 2 Order at 7 ("[T]he factual allegations and legal issues differ between Ekejija and Johnson in material aspects," so "a uniform finding of liability is not required in this case and the risk of inconsistent judgments is not sufficiently extreme to bar entry of default judgment.") (internal quotation marks and citations omitted).  There are material differences such that it is *not* the case that "the identical nature of the claims, facts, and legal issues relative to each defendant made it logically inconsistent to rule in favor of some defendants but not others." *Shanghai Automation Instr. Co., Ltd.*, 194 F. Supp. 2d at 1008 (in action alleging the same nine causes of action, including fraud, against six defendants, entering default judgment against five defendants even though the sixth defendant answered the complaint because doing so would not be "logically inconsistent," under *Frow* and *First T.D.*). First, while Johnson and NVC Fund are both charged with Section 10(b) of the Exchange Act related to the pump scheme, Johnson is also charged with violations related to the fraudulent Section 3(a)(10) scheme that are factually and legally distinct from the pump scheme.  NVC Fund, on the other hand, is not charged with any violations related to the Section 3(a)(10) scheme.

Second, the factual differences with respect to NVC Fund's (through Ekejija) and Johnson's roles in the fraudulent pump scheme are legion and material.  As an initial matter, Johnson publicly deployed the press releases containing the false statements, and so was charged with violating Rule 10b-5(b); NVC Fund, on the other hand, did not issue those press releases and so was not similarly charged.  Dkt. No. 1 ¶ 270.  And it was NVC Fund, through Ekejija, who sourced and obtained the financial review from Standard and Partners and thus knew that what was obtained

19

was not an audit report or audited financial statement. *Id.* ¶¶ 203-207. Because the valuation required audited financial statements – a financial review was insufficient – and because the credit rating relied on the valuation, NVC Fund, through Ekejija, knew that both the valuation and credit rating were illegitimate. *Id.* ¶¶ 221-231. The Complaint does not allege that Johnson played a role in obtaining the financial review, valuation, or credit rating. Nor does the Complaint allege that Johnson is an agent or employee of NVC Fund or Ekejija, so a judgment against NVC Fund would not similarly bind Johnson. *Grumpy Cat Ltd. v. Grenade Beverage LLC*, No. SACV 15-2063-DOC (DFM), 2016 WL 7507768, at *5 (C.D. Cal. Sept. 21, 2016) (denying default judgment against defendant where co-defendant answered because co-defendants "are the agents and employees of" the defendant).

Third, and most significantly, because the claims and facts are different, the legal issues are also entirely different. As Johnson's Answer explains, Johnson does not deny that the statements regarding the audit, valuation and credit rating in the press releases were false or material. Instead, Johnson's Answer explains that Ekejija provided him the false information, and that Johnson believed that false information to be true. *See, e.g.*, Johnson Answer at ¶ 57, p. 10 ("JOHNSON believed the documentation provided by DEFENDANT EKEJIJA was factual and, as asserted in the press releases, audited financials. DEFENDANT EKEJIJA provided both the audit of a reputable european [sic] auditor as well as bond rating documents showing a AAA credit rating."); ¶ 65 (admitting the allegations in paragraphs 209-210 of the Complaint that Standard and Partners conducted a financial review, not an audit, and that it "would have been important to a reasonable investor to know that neither NVC Fund nor NVC Fund Holding Trust were audited" and "that the 'USD 10 trillion' valuation of NVC Fund Holdings Trust was not supported by audited financial statements"); ¶ 72 (admitting the allegation in paragraph 231 of the Complaint that it "would have been important to a reasonable investor to know that the valuation and credit rating of NVC Fund Holdings Trust, and thus the assets to be acquired by the

20

Issuers, were not in fact based on audited financials); ¶ 73 (admitting the same in paragraphs 241-242 of the Complaint). Indeed, Johnson admits "that the 'audit' was actually a review, a lower standard of financial auditing." *Id.* ¶ 57. Thus, even if the statements were false and material, thus making NVC Fund liable (the Court has already found Ekejija liable) for Section 10(b) violations, it would not necessarily make Johnson similarly liable if he had no knowledge of the falsity, *i.e.*, did not have the requisite level of scienter. *Shanghai Automation Instr. Co., Ltd.*, 194 F. Supp. 2d at 1006-07 (interpreting *First. T.D.* and finding it inapplicable where there are no "closely related defenses").

This Court's opinion in *j2 Glob. Inc. v. Fax87*, No. 13-05353 DDP (AJWX), 2016 WL 7260588 (C.D. Cal. Dec. 15, 2016) is instructive. In that case, plaintiff brought the same claims against multiple defendants, including fraud. *Id.* at *3. One defendant – Fani – answered and raised a defense that during the relevant time period, he was no longer involved with the entity alleged to have perpetrated the fraud. *Id.* On plaintiff's motion for default judgment, the Court entered default judgment against a non-answering defendant and over the objections of the answering defendant Fani because, in part, "the defenses [the answering defendant Fani] has represented he intends to present," if proven, would allow the court to "simultaneously conclude that [the answering defendant] is not liable for any wrongdoing but the … defaulting entities are liable." *Id.* Thus, "a uniform finding of liability against all Defendants" was not required. *Id.*

The same is true here: entering default judgment as to NVC Fund, and determining that the press release statements alleged in the Complaint were in fact false and material, does not prejudice Johnson in any way, as Johnson has not denied falsity or materiality, only denying the requisite level of scienter as to falsity. The claims of fraud thus "can stand against [NVC Fund] without necessarily finding defendant [Johnson] individually liable as well." *Shanghai Automation Instr. Co., Ltd.*, 194 F. Supp. 2d at 1009; *j2 Glob. Inc.*, 2016 WL 7260588, at *3. Johnson's

"liability … turns on the facts proven with respect to his own conduct and involvement," *Shanghai Automation Instr. Co., Ltd.*, 194 F. Supp. 2d at 1009, such as his knowledge of the false and material statements, which the SEC "would still need to prove," *j2 Glob. Inc.* 2016 WL 7260588, at *3. Thus, NVC Fund and Johnson are not similarly situated under *First T.D.*

Under these circumstances, Rule 54(b) permits entry of default judgment against NVC Fund now, just as the Court has already done with Ekejija, even though Everett and Johnson have answered the Complaint. *See, e.g.*, *Constr. Laborers Trust Funds for S. Cal. Admin. Co. v. Black Diamond Contr. Grp., Inc.*, No. SACV 17-770-JLS, 2017 WL 6496434, at *5 (C.D. Cal. Dec. 18, 2017) (awarding monetary relief against defaulting defendant, noting that plaintiff "would be prejudiced absent entry of judgment…in the delay of collection of funds"); *SEC v. CFO-5*, No. 08-cv-01594-PAB-MEH, 2010 WL 1790414, at *5 (D. Colo. May 4, 2010) (entering default judgments of injunctive relief, and disgorgement, finding no reason for delay under Rule 54(b)).

Should this Court deny the instant motion, the SEC requests that it enter an order finding that NVC Fund is in default and that it is precluded from prosecuting or defending against this action. *See Siwiec v. Shyun Sun*, No. CV 12-6410-CBM (MANx), 2013 WL 12130002, at *4 (C.D. Cal. Feb. 20, 2013).

## IV.   **CONCLUSION**

For all the foregoing reasons, this Court should enter the Default Judgment sought by the SEC.


Dated:  July 16, 2021

Respectfully Submitted,


/s/ Michael R. Sew Hoy
MICHAEL R. SEW HOY
ROBERTO A. TERCERO
MANUEL VAZQUEZ
Attorneys for Plaintiff
Securities and Exchange Commission

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On July 16, 2021, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR ENTRY OF DEFAULT JUDGMENT AS TO DEFENDANT NVC FUND, LLC** on all the parties to this action addressed as stated on the attached service list:

☒ **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☒ **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☒ **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☐ **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  July 16, 2021                    _/s/ Michael R. Sew Hoy_
                                                        MICHAEL R. SEW HOY

***SEC v. Johnson, et al.***
**United States District Court – Central District of California**
**Case No. 2:20-cv-08985-ODW-DFMx**

### SERVICE LIST

Patrick Jevon Johnson (by U.S. mail and email)
1409 South Lamar Street, Unit 816
Dallas, TX 75215
-and-
304 S. Jones Blvd., Ste. 4283
Las Vegas, NV 89107
pjohnson364@gmail.com
***Defendant Patrick Jevon Johnson (Pro Se)***

Charles Everett (by U.S. mail and email)
36 York Dr.
Fort Worth, TX 76134
(817) 223-4430
ceverett.wmgc@gmail.com
***Defendant Charles Everett (Pro Se)***

Frank Ekejija (by U.S. mail, UPS and email)
2837 Singletree Cove
Cedar Hill, TX 75104
(214) 532-5773
fekejija@nvcfund.com
***Defendant Frank Ekejija (Pro Se)***

NVC Fund, LLC (by U.S. mail, UPS and email)
c/o Frank Ekejija
2837 Singletree Cove
Cedar Hill, TX 75104
(214) 532-5773
fekejija@nvcfund.com
***Defendant NVC, Fund LLC***

NVC Fund, LLC (by U.S. mail, UPS, and email)
c/o Frank Ekejija
2837 Singletree Cove
Cedar Hill, TX 75104
(214) 532-5773
fekejija@nvcfund.com
***Defendant NVC, Fund LLC***

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28